WO

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Louise Ambrose,<br><br>   Plaintiff,<br><br>v.<br><br>Office of Navajo and Hopi Indian Relocation,<br><br>   Defendant. | No. CV-21-08133-PCT-DLR<br><br>**ORDER** |

  Pending before the Court are cross-motions for summary judgment, which are fully briefed. (Docs. 16, 17, 20, 22.) The Court grants summary judgment for Defendant the Office of Navajo and Hopi Indian Relocation ("ONHIR") and denies summary judgment for Plaintiff Louise Ambrose.

**I. Background**

  In 1977, land that was jointly used by the Navajo and Hopi tribes was judicially partitioned as authorized by Congress in the Settlement Act (the "Act"). Pub. L. No. 93–531, 88 Stat. 1712 (1974) (formerly codified as amended at 25 U.S.C. §§ 640d to 640d 31). *See generally Clinton v. Babbitt*, 180 F.3d 1081, 1084 (9th Cir. 1999). The Act also directed ONHIR, an independent federal agency, to provide certain benefits to any "head of a household whose household is required to relocate" because of the partition. 25 U.S.C. § 640d-14(b).

  Plaintiff seeks these benefits. She is an enrolled member of the Navajo Nation and

turned 18 on May 8, 1978.  (AR 71, 350.)  Plaintiff's family formerly resided in the Jeddito area that was partitioned for the use of the Hopi Tribe ("HPL").  (AR 274.)

ONHIR received Plaintiff's Application for Relocation Benefits on February 24, 2009.  (AR 71.)  In her Application, Plaintiff certified that she married in 1979, had her first child in 1980, and worked full-time for wages for the first time in 1982.  (AR 74.)  She also indicated she moved off the HPL in 1974.  (AR 74.)

Plaintiff supplemented her application, explaining that she returned to the HPL during the summers until she graduated from high school, at which time she "moved back in with [her] mother on the HLP area again."  (AR 93.)  ONHIR then asked Plaintiff to specify the exact date she permanently left the HPL, provide information about her 1977 earnings totaling $1,305, and how she supported herself in 1997.  (AR 102.)

ONHIR denied benefits, noting that Plaintiff moved off the HPL in 1978—the last date her family used the HPL homesite—but was not head of household by then because she was not married, not a parent, and not self-supporting by the time she moved off.  (AR 102-03.)  For the self-supporting finding, ONHIR explained that even though she earned $1,305 in 1977, she lived with a host family who provided all her needs and therefore was not self-supporting.  (AR 103.)

Plaintiff appealed, and a hearing was held before Independent Hearing Officer ("IHO") Harold Merkow in March 2015.  (AR 261.)  Plaintiff's brother, Alton Bedonie, testified that the family had two homesites, one on the HPL and one on Navajo Partitioned Land, and that the partition fence separating the homesites was erected in 1978, before the summer rains, which usually, according to Mr. Bedonie, washed out the fence that July.  (AR 276, 281, 285, 291.)  Plaintiff testified that the partition fence was erected in the fall of 1978 but provided no additional detail about the timing.  (AR 322-23.)

Plaintiff testified that she was living in Utah with a "foster" family, the Larsons, in 1977.  (AR 329.)  She further testified that she earned $1,305 that year by receiving a Navajo Nation scholarship to attend BYU—which she ultimately did not do—and

working at the Larson family's store. (AR 331.) Notably, Plaintiff testified that she did not pay rent while living with the Larsons, that they provided her with meals, that they took her on family trips, and that they provided her with clothing. (AR 329-30.)

Plaintiff further testified that she received a $1,000 tribal scholarship in spring 1978 to attend Dixie College, also in Utah. (AR 319-20.) She matriculated that fall and earned an additional $442 working in the college library, bringing her total earnings for 1978 to $1,442. (AR 319-20.)

The IHO found that Plaintiff moved off the HPL in summer 1978, when the partition fence was erected. (AR 381.) In making this finding, the IHO credited Mr. Bedonie's testimony over Plaintiff's, explaining that Mr. Bedonie evinced a more detailed and accurate account of the family history. (AR 382.) The IHO further found that Plaintiff's enrollment at Dixie College did not qualify her has head of household because she applied the $1,000 scholarship only after the partition fence was erected. (AR 384.)

The IHO denied Plaintiff's appeal and entered Final Agency Action on June 10, 2015. (AR 382, 390.)

**II. Standard**

In an ordinary civil case, summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In this action, Plaintiff seeks judicial review of agency actions pursuant to the Administrative Procedures Act ("APA"). Although cross-motions for summary judgment are the procedural vehicles by which the parties present their arguments, the Rule 56(a) standard does not accurately describe the Court's review. The parties might choose to highlight different parts of the record or take liberties in characterizing or summarizing it, but the administrative record is what it is. There are no fact disputes as that phrase is traditionally understood.

The Court's task instead is to examine the administrative record as it exists and

determine, in the context of the specific arguments advanced by Plaintiff, whether the agency's action is "arbitrary, capricious, an abuse of discretion, [] otherwise not in accordance with law," or "unsupported by substantial evidence."[1]  5 U.S.C. § 706(2)(A), (E).  This review is "highly deferential" and requires "affirming the agency action if a reasonable basis exists for its decision." *Sacora v. Thomas*, 628 F.3d 1059, 1068 (9th Cir. 2010) (quoting *Crickon v. Thomas*, 579 F.3d 978, 982 (9th Cir.2009)).  "Substantial evidence is more than a mere scintilla but less than a preponderance—it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995).  The plaintiff bears the burden to demonstrate that an agency's actions violate the APA.  *Forest Guardians v. U.S. Forest Serv.*, 370 F. Supp. 2d 978, 984 (D. Ariz. 2004) (citing cases).

### III. Analysis

Plaintiff alleges error in the IHO's finding that she did not qualify for relocation benefits and that ONHIR breached its fiduciary duty as to her by denying her application for relocation benefits.  The Court takes each in turn.

#### A. Qualifying for relocation benefits

To qualify for relocations benefits, an applicant must have become "a Head of Household on or before the earlier of the date the person left the HPL (if a Navajo) or the [Navajo Partitioned Lands] (if a Hopi) or July 7, 1986." 25 C.F.R. §§ 700.69(c) and 700.147(e).  The issue is whether the IHO erred in finding that Plaintiff had not attained head of household status by the move-off date.

#### 1. Move-off date

The parties agree that the date that should be used as Plaintiff's move-off date is when the partition fence was erected and cut off the family from the HLP residence.  The IHO found that Plaintiff had moved off the HPL when the partition fence was erected in

---

[1] For these reasons, it is the undersigned's view that APA cases would be better resolved via procedures similar to those used in social security disability appeals.  *See* LRCiv 16.1.  Summary judgment briefing is a poor fit because, at bottom, the Court is tasked with reviewing an administrative record and determining whether the agency's decision comports with the relevant legal standards and is supported by enough evidence.

- 4 -

Summer 1978. And substantial evidence supported the finding because Mr. Bedonie testified that the fence was erected "before the summer rains in 1978" and that the summer rain would arrive in July and wash out the fence, allowing the family's cattle to escape to the HPL side of the fence. (AR 285, 291.)

Plaintiff argues the IHO failed to explain why he credited Mr. Bedonie's testimony over her own testimony that the fence was erected "[i]n Autumn" 1978, thus acting arbitrarily and capriciously. (Doc. 16 at 11-15; AR 322-23.) Again, not so. "When the decision of an ALJ [Administrative Law Judge] rests on a negative credibility evaluation, the ALJ must make findings on the record and must support those findings by pointing to substantial evidence on the record." *Ceguerra v. Sec'y of Health & Human Servs.*, 933 F.2d 735, 738 (9th Cir. 1991) (citation omitted). Here, the IHO explained that Mr. Bedonie "had a much better recollection of events involving the family's living situation, both before and after erection of the partition fence," and that his testimony was more detailed, buttressing his claim that the fence was erected in the summer of 1978 by noting that the "summer rains caused erosion under the fence." (AR 382.) The IHO supported his negative credibility finding and did not act arbitrarily or capriciously by crediting Mr. Bedonie's testimony over Plaintiff's on the fence erection date.

### 2. Head of household

An unmarried person who is not a parent may qualify for head of household status if he or she "actually maintain[s] and support[s] him/herself." 25 C.F.R. § 700.69(a). ONHIR's binding regulations or policies do not identify a specific dollar amount an applicant must have earned to qualify as "self-supporting." Instead, the binding regulation requires that the applicant prove that he or she "actually maintained and supported him/herself," whatever his wages. *See* 25 C.F.R. § 700.69(a)(2). ONHIR, however, has recognized that an applicant who earned at least $1,300 per year can make a prima facie showing of self-supporting status. *See Benally v. Office of Navajo & Hopi Relocation*, No. 13-CV-8096-PCT-PGR, 2014 WL 523016 (D. Ariz. Feb. 10, 2014).

The IHO found that Plaintiff had not achieved head of household status by the

time the partition fence was erected in Summer 1978. And substantial evidence supports this finding because other people provided her "basic personal needs for food and shelter." (AR 5.)

Plaintiff argues that the IHO should have found that she was a head of household merely because of her earnings in excess of $1,300, either in 1977 or 1978. This fails for two reasons. First, according to the so-called "Susan Crystal Memorandum" cited by Plaintiff, a scholarship may be used in the self-supporting status consideration only if it "includes funds for living expenses." (Doc. 16-1 at 7.) Plaintiff provided no evidence that either the 1977 or 1978 scholarships included funds for living expenses. The 1977 scholarship was never used at all, and Plaintiff did not apply the 1978 scholarship until after the partition fence was erected. Absent pre-application evidence that portions of the scholarship was earmarked for living expenses[2] or actually applying scholarship funds toward living expenses, Plaintiff has not met her burden to show that the scholarships met the criteria in the Susan Crystal Memorandum. 25 U.S.C. § 700.147(b) (putting the burden to prove head of household status on the applicant).

And second, even if those scholarships factored into the self-supporting consideration, that doesn't change that the Larsons gratuitously provided her basic needs—food and shelter—before the partition fence was erected. As the Susan Crystal Memo notes, a scholarship, is just one criterion in the self-support consideration. (Doc. 16-1 at 7.) Substantial evidence supported the IHO's determination that Plaintiff was not self-supporting when the partition fence was erected in Summer 1978.

**B. Fiduciary claim**

Plaintiff's fiduciary claim depends on finding that ONHIR breached its fiduciary duty by denying her relocation benefits as part of a system-wide failure to apply consistent standards to applications for benefits. Because the Court finds that substantial supports the IHO's denial of benefits, the fiduciary claim fails.

---

[2] Plaintiff argues in her briefing that the scholarship was "to pay for tuition and room and board," citing AR 319-20. But that portion of the administrative record says nothing about the scholarship being for room and board. Argument cannot stand in for evidence.

- 6 -

**IV. Conclusion**

Substantial evidence supports the IHO denial of benefits. Accordingly,

**IT IS ORDERED** that Plaintiff's motion for summary judgment (Doc. 16) is **DENIED** and Defendant's motion for summary judgment (Doc. 17) is **GRANTED**. The Clerk of the Court shall enter judgment accordingly and terminate the case.

Dated this 31st day of August, 2022.

_____
Douglas L. Rayes
United States District Judge